UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALLCO RENEWABLE ENERGY LIMITED, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> DEB HAALAND, *et al.*, <br><br> Defendants. | Civil Action No. 1:21-cv-11171 <br><br> Hon. Indira Talwani <br><br> Motion for Leave to File Amicus Brief Granted April 11, 2022 (Doc. #100) |

**BRIEF OF THE COMMONWEALTH OF MASSACHUSETTS AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**

MAURA HEALEY

MASSACHUSETTS ATTORNEY GENERAL

Matthew Ireland, BBO No. 554868
  *Assistant Attorney General*
Turner H. Smith, BBO No. 684750
  *Deputy Division Chief*
Environmental Protection Division
Office of the Massachusetts Attorney General
One Ashburton Place, 18th Floor Boston, MA 02108-1598
(617) 727-2200
Matthew.Ireland@mass.gov

*Counsel for amicus curiae Commonwealth of Massachusetts*

April 15, 2022

## TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICUS CURIAE. .................................................. 1

ARGUMENT. ................................................................................................................... 4

I. Both Offshore Wind and Onshore Solar Generation Are Needed to Meet the Commonwealth's Bold Greenhouse Gas Emissions Reduction Mandates. ......................... 4

II. The Commonwealth's Demonstrated Commitment to Development of Solar Generation Further Undermines Allco's Claim of Economic Harm. ................................ 6

CONCLUSION. ................................................................................................................ 8

APPENDIX. ...................................................................................................................... i

## TABLE OF AUTHORITIES

**Cases**

*Kain v. Dep't of Envtl. Prot.*, 474 Mass. 278 (2016) ....................................................................... 1

*New England Power Generators Ass'n v. Dep't of Envtl. Prot.*, 480 Mass. 398 (2018) ................................................................................................................................................ 1

**Statutes**

2008 Mass. Acts ch. 169 ............................................................................................................. 3, 7

2008 Mass. Acts, Ch. 298 ............................................................................................................... 1

2010 Mass. Acts. ch. 359, §§ 25-30 ............................................................................................... 7

2012 Mass. Acts ch. 209, § 36 ....................................................................................................... 3

2012 Mass. Acts ch. 209, §§ 27-28, 30 .......................................................................................... 7

2014 Mass. Acts ch. 251, §§ 5-6 .................................................................................................... 7

2016 Mass. Acts ch. 188, § 12 ................................................................................................... 3, 5

2016 Mass. Acts ch. 75 .................................................................................................................. 4

2016 Mass. Acts ch. 75, § 11 ......................................................................................................... 7

2016 Mass. Acts ch. 75, §§ 4-9 ...................................................................................................... 7

2018 Mass. Acts ch. 227, § 21 ................................................................................................... 3, 5

2018 Mass. Acts ch. 227, §§ 15-17 ................................................................................................ 7

2021 Mass. Acts ch. 8, § 91 ....................................................................................................... 3, 5

Mass. Gen. Laws ch. 21N ........................................................................................................... 2, 8

Mass. Gen. Laws ch. 21N §§ 3(b), 4(a), 4(h) ................................................................................. 2

Mass. Gen. Laws ch. 25A, § 11F ............................................................................................... 6, 7

Mass. Gen. Laws. ch. 164, §§ 138-140 .......................................................................................... 7

Mass. Gen. Laws. ch. 25A, § 17(c) ................................................................................................ 7

**Table of Authorities (Continued)**

**Regulations**

225 C.M.R. §§ 14.00 *et seq* .................................................................................................. 4, 6

225 C.M.R. §§ 21.00 *et seq* .................................................................................................. 4, 7

310 C.M.R. §§ 7.71 *et seq.*, 7.75 *et seq.* ................................................................................. 8

**Other Authorities**

*Determination of Statewide Emissions Limit for 2050* (Apr. 22, 2020) ...................................... 2

Kathleen Theoharides, *Request for Comment on Clean Energy and Climate Plan for 2030* (Dec. 30, 2020) ........................................................................................................................ 2

Mass. Clean Energy Center, *Massachusetts Residential Guide to Solar Electricity*, (Mar. 2019) ............................................................................................................................... 3

Massachusetts 2050 Decarbonization Roadmap (Dec. 2020) ............................................... 2, 3, 5

## INTRODUCTION AND INTEREST OF AMICUS CURIAE

The Office of the Massachusetts Attorney General submits this brief on behalf of the Commonwealth of Massachusetts, as amicus curiae, in support of the Federal Defendants motion to dismiss the Plaintiffs' Amended Complaint, Doc. # 64 (March 9, 2022), which motion the Intervenor-Defendants' filed notice to join, Doc. # 69 (March 14, 2022).  The Plaintiffs' Amended Complaint, Doc. # 58 (Feb. 23, 2022), challenges federal permitting for the Vineyard Wind 1 Project (the "Project"), the nation's first large-scale offshore wind energy project.  The Commonwealth writes to explain its strong interest in and demonstrated support for development of abundant renewable energy resources as essential to the Commonwealth's efforts to respond to the accelerating and devastating dangers of climate change.  This background should assist the Court in assessing the claim by Plaintiff solar company Allco Renewable Energy Company, LTD ("Allco") that it will suffer economic harm as a result of the Project's approval.  *See e.g.*, Plaintiffs' Amended Complaint, ¶ 36.  Contrary to Allco's claim, *both* offshore wind, like the Project, *and* onshore solar, which is Allco's business, are critical and complementary components—not direct competitors—in the Commonwealth's plan to meet Massachusetts' nation-leading climate goals.

In 2008 the Commonwealth committed to "attain actual, measurable, and permanent [greenhouse gas] emissions reductions" under its Global Warming Solutions Act ("GWSA"). [1] *Kain v. Dep't of Envtl. Prot.*, 474 Mass. 278, 300 (2016). The GWSA was "designed to make Massachusetts a national, and even international, leader in the efforts to reduce the greenhouse gas emissions that cause climate change" through ambitious emissions reduction mandates. *New England Power Generators Ass'n v. Dep't of Envtl. Prot.*, 480 Mass. 398, 399 (2018).  In 2021 Massachusetts enacted even more aggressive emissions reduction requirements in the

---

[1] *See* 2008 Mass. Acts ch. 298 (codified at Mass. Gen. Laws ch. 21N (2013)).

1

Massachusetts Climate Protection Act."[2]  *See* MASS. GEN. LAWS ch. 21N.  That Act requires that the Commonwealth achieve net-zero statewide greenhouse gas emissions in 2050, with interim reductions of at least 50 percent below 1990 emissions level in 2030, and at least 75 percent below 1990 level in 2040.  *See id* §§ 3(b), 4(a), 4(h).

    To implement the Commonwealth's ambitious mandates, the Executive Office of Energy and Environmental Affairs ("EEA") has published an interim "Clean Energy and Climate Plan for 2030" with policies to reduce greenhouse gas emissions from all significant emitting sectors of the economy.[3]  EEA also issued a "Massachusetts 2050 Decarbonization Roadmap" proposing comprehensive strategies to ensure that Massachusetts achieves its emissions reduction mandates "while maintaining a healthy, equitable, and thriving economy."[4]  These strategies require the Commonwealth to decarbonize its electricity sector with clean and renewable energy to meet the increased demand from fully electrifying its high-emitting building and transportation sectors and thereby meet the Commonwealth's emissions reduction requirements.[5]

    Offshore wind and onshore solar electricity generation provide a broad array of

---

[2] 2021 Mass. Acts. ch. 8 (codified at Mass. Gen. Laws ch. 21N (2021)).  The Executive Office of Energy and Environmental Affairs ("EEA") established net zero greenhouse gas (GHG) emissions as the Commonwealth's new legal emissions limit for 2050 through administrative action pursuant to Mass. Gen. Laws ch. 21N.  *See Determination of Statewide Emissions Limit for 2050* (Apr. 22, 2020), https://www.mass.gov/doc/final-signed-letter-of-determination-for-2050-emissions-limit/download.

[3] *See* Kathleen Theoharides, *Request for Comment on Clean Energy and Climate Plan for 2030* (Dec. 30, 2020) ("Interim Clean Energy and Climate Plan for 2030"), https://www.mass.gov/doc/interim-clean-energy-and-climate-plan-for-2030-december-30-2020/download.

[4] Massachusetts 2050 Decarbonization Roadmap, at 7 (Dec. 2020) ("Decarbonization Roadmap"), https://www.mass.gov/doc/ma-2050-decarbonization-roadmap/download.

[5] *See* Interim Clean Energy and Climate Plan for 2030, *supra* note 3, at 36, https://www.mass.gov/info-details/massachusetts-clean-energy-and-climate-plan-for-2025-and-2030

environmental and public health benefits by displacing fossil fuel power plants, which emit large quantities of harmful greenhouse gases and other harmful air pollutants,[6] often in low income communities and communities of color that are already disproportionately impacted by environmental harms.  The Commonwealth's 2050 Decarbonization Roadmap thus calls for development of significant offshore wind *and* onshore solar generation—including rooftop-mounted and ground-mounted panels—to comprise the bulk of Massachusetts' renewable energy profile by 2050.[7]  Over the next thirty years, 15-20 gigawatts ("GW") of offshore wind and 15-20 GW of solar are each expected to be developed to meet anticipated energy demand.[8]

The Commonwealth has established numerous statutory and administrative programs to support the development of clean, reliable, and renewable resources, including both offshore wind and solar, to ensure those resources are constructed and interconnected to the New England electric power system.  For example, under the 2008 Green Communities Act ("GCA"), the Legislature has repeatedly directed electric distribution companies to procure long-term contracts for renewable energy, including wind and solar, through a public bidding process.[9]  Procurements under the GCA have spurred the development of significant terrestrial wind, solar, and other renewable energy resources throughout New England.  For example, in 2017, the Massachusetts Department of Public Utilities ("DPU") approved contracts with nine solar projects for 264.48 MW located throughout New England.  And in 2019, electric distribution companies selected and the DPU approved 20-year power contracts with the Project under this

---

[6] *See* Mass. Clean Energy Center, *Massachusetts Residential Guide to Solar Electricity*, at 14 (Mar. 2019), https://files-cdn.masscec.com/SolarElectricityResidentialGuide.pdf.
[7] Decarbonization Roadmap, *supra* note 4, at 55, 56.
[8] *Id*. at 55.
[9] 2008 Mass. Acts ch. 169, as amended by 2012 Mass. Acts ch. 209, § 36, 2016 Mass. Acts ch. 188, § 12, 2018 Mass. Acts ch. 227, § 21, and 2021 Mass Acts ch. 8, § 91.

process for 800 megawatts (MW)[10] of offshore wind power—enough to power 400,000 homes.[11] And, as further discussed below, the Legislature and the Massachusetts Department of Energy Resources also have created numerous programs to incentivize development of solar facilities,[12] spurring development of 3.3 GW of solar, with another 2.6 GW expected in the next few years.

## ARGUMENT

In support of dismissal, the Federal Defendants argue that Allco's claims of economic harm are speculative because Allco has not demonstrated that approval of the Project would impact Allco's ability to sell solar-generated electricity in the future. *See* Federal Defendants' Memorandum in Support of Motion to Dismiss the Amended Complaint, Doc. # 65 (March 9, 2022), at 5-8.[13] As discussed below, the Commonwealth concurs. Massachusetts' ambitious greenhouse gas emissions reduction mandates will necessitate and provide increasing opportunities for additional clean energy generation from *all* available renewable resources, including solar. Because expansion of offshore wind thus does not limit economic prospects for solar project developers in Massachusetts in any way, the Court should reject Allco's speculative claim of future harm from Federal Defendants' siting approval of the Project.

I. **Both Offshore Wind and Onshore Solar Generation Are Needed to Meet the Commonwealth's Bold Greenhouse Gas Emissions Reduction Mandates.**

The sheer capacity of renewable energy needed to meet the Commonwealth's climate

---

[10] For reference, 1,000 MW is equal to 1 GW of energy capacity.
[11] Allco did not seek to participate in any of these DPU power purchase proceedings despite the interest it now asserts and harm it now claims.
[12] *See* 2016 Mass. Acts ch. 75; 225 Code Mass. Regs. §§ 14.00 *et seq.*; 225 Code Mass. Regs. §§ 21.00 *et seq.*
[13] The Commonwealth takes no position at this time on the other grounds for dismissal raised by the Defendants.

goals belies Allco's claim that federal approval of the Project will cause Allco economic harm. As described above, the Commonwealth has committed to nation-leading greenhouse gas emissions reduction mandates that will necessitate electrification and decarbonization of every sector of our economy. Accordingly, vast renewable energy resources must come online in both the long and short term.[14] By 2050, the Commonwealth anticipates that 15-20 GW of offshore wind and 15-20 GW of solar will need to be developed.[15] In the shorter term, the Massachusetts Climate Protection Act directs the procurement of an additional 2.4 GW of offshore wind for 2027, increasing the Commonwealth's procurement target from 3.2 GW to 5.6 GW.[16] And, as detailed below, existing legislative and administrative programs in the Commonwealth *also* will support at least 6.2 GW of solar development for Massachusetts.[17]

Aside from demand, offshore wind and onshore solar generation also have important inherent differences that make both types of generation essential elements of a reliable renewable energy portfolio. As the Decarbonization Roadmap notes, offshore wind speeds in the North Atlantic are strongest and most stable in the winter and at night.[18] Solar power, however, is strongest and most reliable in summer, peaking midday.[19] The Commonwealth thus views "solar and offshore wind [as] complementary resources, rather than interchangeable" competitors.[20]

Viewed against that backdrop, offshore wind like Vineyard Wind's 800 MW Project is a critical component of Massachusetts' needed renewable energy and is essential to the Commonwealth meeting its greenhouse gas emissions reduction mandates, including the 2030

---

[14] Decarbonization Roadmap, *supra* note 4, at 56.
[15] *Id*. at 55.
[16] 2021 Mass. Acts ch. 8, § 91; 2018 Mass. Acts ch. 227, § 21; 2016 Mass. Acts ch. 188, § 12.
[17] *See infra* Part II.
[18] Decarbonization Roadmap, *supra* note 4, at 59.
[19] *Id.*
[20] *Id.*

emissions reduction limit for the energy supply sector. But the Project does not limit the acute need for significant solar development. Instead, *both* offshore wind *and* onshore solar remain essential to meeting Massachusetts' ambitious climate goals.

## II. The Commonwealth's Demonstrated Commitment to Development of Solar Generation Further Undermines Allco's Claim of Economic Harm.

The Commonwealth's aggressive support for solar development to meet the state's climate goals confirms that the development of offshore wind does not impede opportunities for solar development across the Commonwealth. Indeed, since 2008, the Massachusetts Legislature has created or expanded specific programs for renewable energy development in each of its legislative sessions, with a primary focus on the continued support for solar development. *See* Appendix 1. Because many of these programs favor solar development exclusively, offshore wind is simply not a direct competitor with solar generation.

Together, three keystone Massachusetts solar incentive programs will support at least 6.2 GW of solar development. First, in 2008, as part of a program that requires retail electric suppliers to purchase increasing amounts of renewable energy resources annually (the Massachusetts Renewable Energy Portfolio Standard ("RPS")), the Department of Energy Resources set a goal of building 250 MW solar by 2017. To meet that goal, the agency created a carve-out of the RPS designed only for solar, known as the Solar Renewable Energy Credit ("SREC").[21] Second, the successor solar incentive program paradigm, known as the Solar Massachusetts Renewable Target ("SMART"), requires Massachusetts electric distribution companies to purchase from new solar facilities both energy *and* environmental attributes (*i.e.*, credits for emissions reductions or other environmental benefits that can be used to satisfy the

---

[21] *See* Mass. Gen. Laws ch. 25A, § 11F; 225 Code Mass. Regs. §§ 14.00 *et seq*.

companies' RPS obligations). Today, 3.356 GW of solar generation are currently operating under the SREC, SREC II, and the SMART programs. And the current SMART program recently received approval to double its capacity to 3.600 GW.[22]

Third, solar facilities were eligible to participate in long-term contracting procurements administered by electric distribution companies pursuant to the GCA. Under the GCA's Sections 83, 83A, and 83D, developers of RPS-eligible facilities, like solar, responded to at least six requests for proposals, with nine solar facilities winning 264 MW in contracts.[23]

Multiple other programs also support solar development in Massachusetts including:

- Net Energy Metering ("NEM"), which gives customers credits for energy that their renewable energy facilities generate directly on their electric utility bills.[24]

- The Clean Peak Energy Portfolio Standard ("CPS"), which provides incentives to clean energy technologies, including solar, that can supply electricity or reduce demand during seasonal peak demand periods. The CPS allows a facility to generate additional income above and beyond the sale of RPS, SMART, or NEM credits.[25]

- The Clean Energy Standard ("CES"), which is designed to complement the RPS by adding clean energy requirements for electricity providers (including

---

[22] *See id*; 2016 Mass. Acts ch. 75, § 11; 225 Code Mass. Regs. §§ 20.00 *et seq*.
[23] The Project competed in a similar procurement pursuant to the GCA's Section 83C.
[24] *See* Mass. Gen. Laws. ch. 164, §§ 138-140, as amended by 2018 Mass. Acts ch. 227, §§ 15-17; 2016 Mass. Acts ch. 75, §§ 4-9; 2014 Mass. Acts ch. 251, §§ 5-6; 2012 Mass. Acts ch. 209, §§ 27-28, 30; 2010 Mass. Acts ch. 359, §§ 25-30. As there is no cap on the total capacity of small NEM facilities built in Massachusetts, the value of NEM credits is likely to exceed the value of the combined SMART energy and incentive credits and thus allow for unlimited residential and small business facilities. *See* Mass. Gen. Laws ch. 164, §§ 139(i).
[25] Mass. Gen. Laws. ch. 25A, § 17(c); 225 Code Mass. Regs. §§ 21.00 *et seq*.

municipal electric utilities which have no RPS obligation) through purchase of RPS- and CES-eligible clean energy.[26]

These repeated demonstrated commitments by the Commonwealth to incentivizing solar development and strengthening renewable energy requirements further undermine Allco's vague claim that the Project will somehow harm the company's bottom line.  Indeed, the 6.2 GW of solar anticipated under the Massachusetts programs just described *exceeds* the call for 5.6 GW of offshore wind required under the GCA—a result consistent with the expectations of the Decarbonization Roadmap.  Because the expansion of offshore wind does not preclude or otherwise limit the opportunities for solar project developers in Massachusetts, the Commonwealth concurs with the Federal Defendants' arguments that Allco has not articulated, and indeed cannot articulate, any threat of harm sufficient to establish standing.

## CONCLUSION

For all the foregoing reasons, the Commonwealth urges this court to grant the Federal Defendants' and Intervenor-Defendants' Motions to Dismiss the Amended Complaint.

Respectfully submitted,

MAURA HEALEY
MASSACHUSETTS ATTORNEY GENERAL

　/ s / Matthew Ireland

Matthew Ireland, BBO No. 554868
　*Assistant Attorney General*
Turner H. Smith, BBO No. 684750
　*Deputy Division Chief*
Environmental Protection Division
Office of Attorney General
One Ashburton Place, 18th Floor Boston, MA 02108-1598
(617) 727-2200
Matthew.Ireland@mass.gov

Dated:  April  15, 2022.

---

[26] Mass. Gen. Laws. ch. 21N, § 2(a)(5); 310 C.M.R. §§ 7.71 *et seq.*, 7.75 *et seq.*

**LOCAL RULE 7.1(A)(2) CERTIFICATION**

      I hereby certify that on February 15 and 16, 2022, I conferred with counsel for Plaintiff Allco, with counsel for the Federal Defendants, and with counsel for Defendant-Intervenor Vineyard Wind. By e-mail on February 15, counsel for Allco indicated that the Plaintiffs would not oppose this this motion. By e-mail on February 16, counsel for the Federal Defendants indicated that the Federal Defendants would not oppose this motion and counsel for the Intervenor-Defendant indicated that Vineyard Wind assents to this motion. The Court Granted leave for the Commonwealth to file as amicus curie on April 11, 2022 (Doc. # 100).

                                                     */ s / Matthew Ireland*
                                                     Matthew Ireland

**CERTIFICATE OF SERVICE**

      I, Matthew Ireland, certify that the foregoing Brief of the Commonwealth of Massachusetts as Amicus Curiae in Support of Defendants' Motion to Dismiss, which was filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                     */ s/ Matthew  Ireland*
                                                     Matthew Ireland

# APPENDIX

| Massachusetts Programs Supporting Solar Energy Development | | |
|---|---|---|
| **Clean Energy Programs** | **Current Development Capacity** | **Authority** |
| RPS | 20% of electric load in 2022; 22% of electric load in 2023; 24% of electric load in 2024; (increases by 3% annually until 2029, 1% thereafter) | Mass. Gen. Laws ch. 25A, § 11F; 225 Code Mass. Regs. §§ 14.00 *et seq.* |
| SREC | 653 MW | Mass. Gen. Laws ch. 25A, § 11F(g); 225 Code Mass. Regs. §§ 14.00 *et seq.* |
| SREC II | 1,759 MW | Mass. Gen. Laws ch. 25A, § 11F(g); 225 Code Mass. Regs. §§ 14.00 *et seq.* |
| SMART | 3,600 MW | 2016 Mass. Acts ch. 75; 225 Code Mass. Regs. §§ 21.00 *et seq.* |
| GCA Renewable Procurement, known as Section 83 | 3% of the total energy demand of the electric distribution companies. | 2008 Mass. Acts. ch. 169; 220 Code Mass. Regs. 17.00 *et seq.* |
| GCA Renewable Procurement, known as Section 83A | 4% of the total energy demand of the electric distribution companies. | 2012 Mass. Acts ch. 209, § 36; 220 Code Mass. Regs. §§ 21.00 *et seq.* |
| GCA Renewable Procurement, known as Section 83D | 9,450 MW | 2016 Mass. Acts. ch. 188, § 12; 220 Code Mass. Regs. §§ 24.00 *et seq.* |
| Net Energy Metering | 1,667 MW plus unlimited facilities under certain size thresholds | Mass. Gen. Laws. ch. 164, §§ 138-140; 220 Code Mass. Regs. §§ 18.00 *et seq.* |
| Clean Peak Energy Standard | 4.5% of electric load in 2022 (increases by 1.5% annually) | Mass. Gen. Laws ch. 25A, § 17; 225 Code Mass. Regs. §§ 20.00 *et seq.* |
| Clean Energy Standard | 42% of electric load in 2022 (increases by 2% annually) | Mass. Gen. Laws ch. 21N, § 2(a)(5); 310 C.M.R. §§ 7.71 *et seq.*, 7.75 *et seq.* |